# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PAMELA SUSKE, | : | |
| Plaintiff, | : | |
| | | Case No. 3:12cv00051 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

On January 17, 2013 the undersigned issued a Report and Recommendations (Doc. #14) in this social security case recommending the Commissioner's non-disability determination be affirmed and the case be terminated on the docket of this Court.

Plaintiff filed objections to the Report and Recommendations and Defendant responded timely. (Docs. #15, 16). On March 25, 2013, United States District Judge Walter Herbert Rice issued a Decision and Entry overruling Plaintiff's objections; adopting the Report and Recommendations in its entirety; and entering judgment in favor of the Defendant Commissioner and against Plaintiff. (Doc. #17, *PageID#* 656). The Clerk of Court entered Judgment the same day. (Doc. #18).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Presently, this case is before the Court upon Plaintiff's Motion to Alter or Amend Judgment (Doc. #19), Defendant's Response (Doc. #20), and the record as a whole.

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  However, "a motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).  Likewise, a Rule 59(e) motion "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1).

Plaintiff requests the Court alter or amend its judgment in order to correct errors of law set forth in the Report and Recommendations that was subsequently adopted by the Court.  (Doc. #19, *PageID##* 663-68).  Plaintiff contends that portions of the decision issued in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) "are directly pertinent to Plaintiff's arguments in this case and demonstrate errors of law in the Magistrate Judge's Report which this Court ultimately adopts in whole."  (Doc. #19, *PageID#* 665).  Although the Court will nevertheless address these arguments, it appears Plaintiff could have raised such challenges to the Report and Recommendations (Doc. #14)

2

prior to the entry of judgment in this case on March 25, 2013, as the Sixth Circuit issued its decision in *Gayheart* thirteen (13) days earlier, on March 12, 2013. *Gayheart*, 710 F.3d at 365.

In *Gayheart*, plaintiff-appellant Charles Gayheart applied for Social Security disability insurance benefits (DIB) in December 2005 due to anxiety, panic disorder, bipolar disorder, and depression. *Gayheart*, 710 F.3d at 368. Gayheart's application was ultimately denied, and he sought review in federal district court pursuant to 42 U.S.C. § 405(g). *Id*. The assigned Magistrate Judge issued a Report and Recommendations concluding the ALJ's decision was not supported by substantial evidence and recommended Gayheart be awarded DIB. *Id.* The district court sustained the Commissioner's objections to the Report and Recommendations and affirmed the ALJ's decision. *Id.* Gayheart appealed.

Gayheart quit his job of 20 years in September 2005 due to daily workplace panic attacks he could no longer handle. Promptly after quitting his job, Gayheart sought treatment from a psychological therapist, Jackie Thompson, who diagnosed him with a generalized anxiety disorder and a panic disorder without agoraphobia (a fear of public places), with a differential diagnosis of bipolar disorder. *Id.* at 368. A few months later, in November 2005, Gayheart also began treating with a psychiatrist, Alice Onady. *Id.* at 369. Dr. Onady diagnosed Gayheart with a panic disorder, with bipolar II as a differential diagnosis. *Id.* Her "notes continued to document diagnoses of panic disorder and bipolar II throughout her treatment of Gayheart . . . ." *Id.*

3

Gayheart also treated with Jennifer Fenske-Doyle, a psychological therapist in Dr. Onady's medical-practice center, from September 2006 through October 2007. *Id.* Fenske-Doyle diagnosed Gayheart with bipolar II and panic disorder with agoraphobia, and the Sixth Circuit specifically noted that her treatment notes "provide considerable detail about the severity of the symptoms that Gayheart suffered and how they impacted his daily life. They reflect Gayheart's description of anxiety that he suffers from simply having to drive himself to and from his therapy sessions. The notes also reflect his avoidance of social situations, a loss of interest in hobbies, paranoid thinking, feelings of hopelessness, difficulties concentrating, and passive thoughts of suicide." *Id.* at 369-70.

Gayheart was also examined separately by Drs. Flexman and Chiappone, at the request of the Bureau of Disability Determination. *Id.* at 372. Dr. Flexman saw Gayheart in February 2006 and diagnosed him with panic disorder without agoraphobia and a personality disorder (not otherwise specified). Dr. Flexman concluded that Gayheart was moderately impaired in his ability to interact appropriately with the public and coworkers, and in his ability to respond appropriately to work pressures and changes in a work setting. *Id.* at 373. Dr. Chiappone saw Gayheart in June 2008 and diagnosed him with a pain disorder, and panic disorder without agoraphobia, and with borderline intellectual functioning. *Id.* Dr. Chiappone concluded Gayheart was markedly impaired in his ability to relate to coworkers, supervisors, and the public, to respond to usual work situations and changes in a routine work setting, and to understand, remember, and carry out complex instructions.

The ALJ ultimately accorded "little weight" to the opinions of Dr. Onady. According to the ALJ, the opinions "fail[ed] both prongs of the test for controlling weight – they 'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence.'" *Id.* On appeal, the Sixth Circuit held that "the ALJ did not provide 'good reasons' for why Dr. Onady's opinions fail to meet either prong of this test" and "the ALJ does not identify substantial evidence that is purportedly inconsistent with Dr. Onday's opinions." *Id.* The Sixth Circuit also held the ALJ improperly applied greater scrutiny to the opinion of the treating psychiatrist than to those of the nontreating and nonexamining sources, and incorrectly assessed the materiality of Gayheart's alcohol abuse. *Id.* at 380. The judgment of the district court was reversed and the case was remanded to be returned to the Social Security Administration for further consideration. *Id.* at 381.

Plaintiff argues the decision in *Gayheart* is "directly pertinent to Plaintiff's arguments . . . and demonstrates errors of law in the Magistrate Judge's Report . . .," yet a careful reading of *Gayheart* reveals it is dissimilar in critical aspects and fails to demonstrate the errors law Plaintiff believes to have been committed.

One such critical difference between this case and *Gayheart* involves the evidence of a treating relationship between the claimant and psychiatrist. In fact, as Defendant correctly notes, "[t]he crux of [the] Gayheart decision was about the way the ALJ scrutinized and weighed the opinion by a treating psychiatrist with whom Mr. Gayheart had a four year treating relationship." (Doc. #20, *PageID#* 673) (underlining in original). In

5

*Gayheart,* the claimant Charles Gayheart had a lengthy treating relationship with his psychiatrist, Dr. Onady, evidenced through years of detailed treatment records. *See Gayheart*, 710 F.3d at 369 ("[Dr. Onady's] notes continued to document diagnoses of panic disorder and bipolar II throughout her treatment of Gayheart, and she regularly modified his prescriptions of psychotropic medications."). Here, Plaintiff relies upon the opinion of Dr. Halley and Ms. Fussichen, consisting of a three-page Mental Impairment Questionnaire completed by Ms. Fussichen on October 20, 2010, and signed by Dr. Halley on November 28, 2010. Plaintiff refers to Dr. Halley as her "treating" psychiatrist, yet the record lacks treatment notes from him or any other evidence suggesting a treatment relationship. *See Brooks v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("Treating sources are doctors who have provided the claimant with 'ongoing treatment.'"); *see also* 20 C.F.R. § 416.902. Whereas the lengthy treating relationship between Gayheart and his psychiatrist, Dr. Onady, was clearly established in the record of that case through years of her notes, it appears the only evidence of Plaintiff's psychiatrist in this case is the doctor's signature on the questionnaire completed by Ms. Fussichen. Such a signature, however, does not indicate whether Dr. Halley actually examined or even met Plaintiff prior to signing off on the form.

Plaintiff also argues the ALJ "aggressively leverages select 'good findings' from [her] treatment notes as a means of rigorously scrutinizing Dr. Halley and Ms. Fussichen's assessments and ultimately giving them little weight." (Doc. #19, *PageID#* 665). According to Plaintiff, the Report and Recommendations "endorses this approach and

6

similarly dredges the treatment notes of record for any point-in-time clinical finding or statement which seems to imply that Plaintiff's mental health symptoms are less severe." (*Id.*). This argument also misses the mark.

As District Judge Rice clearly explained in this Court's Decision and Entry adopting the Report and Recommendations in this case, "the duty of the Magistrate Judge (and the District Court in determining the disposition of the Magistrate Judge's Report and Recommendations) is not to determine whether the Record contains substantial evidence of disability. Rather, the task of the judicial officer is to determine if the Administrative Law Judge's determination of non-disability is supported by substantial evidence." (Doc. #17, *PageID#* 659). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance . . .'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Ms. Fussichen and Dr. Halley signed a questionnaire in which it was indicated, in part, that Plaintiff had moderate restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work setting or elsewhere); and marked episodes of deterioration or decompensation in work. (*PageID#* 512).

The ALJ concluded this opinion was not entitled to controlling or deferential weight, and ultimately provided it with "little weight" because "it is unsupported by objective signs

7

and findings." (*PageID#* 72). To support this finding, the ALJ noted that Plaintiff's condition was improving, she had only been treated conservatively, and "[h]er activities of daily living . . . suggest she functions at a higher level than set forth in [the] assessment." (*Id.*).

In the Report and Recommendations issued January 17, 2013, the Court reviewed the findings of the ALJ and, after a review of the record, concluded they were supported by substantial evidence. It was the task of the Court to review the record in order to determine if relevant evidence existed therein upon which "a reasonable mind might accept as adequate to support" the ALJ's findings. *See Bowen*, 478 F.3d at 746. Although Plaintiff believes the specific, numerous examples of such relevant evidence cited to in the Report and Recommendations were "dredged" up by the undersigned, such examples were noted because they represent some of the relevant evidence in the record supporting the ALJ's findings. It was not an error of law for the Court to do so, nor was it required by the Court to discuss every example of evidence Plaintiff contends supports her claim of disability. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.' Therefore, if substantial evidence supports the ALJ's decision this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

Plaintiff also contends "it was . . . an error of law for the Court to uphold the ALJ's

8

finding that Plaintiff engages in a 'wide range of daily activities' and to subsequently allow said activities to stand as substantial evidence which reasonably undermines the opinions of Plaintiff's treating sources." (Doc. #19, *PageID#* 667).

Despite Plaintiff's apparent belief otherwise, the Sixth Circuit's decision in *Gayheart* does not prevent an ALJ from considering a claimant's activities of daily living. *Gayheart*, 710 F.3d at 377 ("[Gayheart's] activities would be relevant if they suggested that [he] could do something on a sustained basis that is inconsistent with [his treating psychiatrist's] opinions. But they do not."). In *Gayheart*, the Sixth Circuit noted that many of the examples relied upon by the ALJ were actually taken out of context and that "nothing in the record suggests [Gayheart] has left the house independently and on a sustained basis." *Gayheart*, 710 F.3d at 378; *see also* 20 C.F.R. § 404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00 ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.").

For example, the ALJ implied that Gayheart's ability to do such activities as driving short distances a few times a week, going to medical appointments, and visiting his aunt and uncle who live on the same street as him, was inconsistent with the marked social and daily living restrictions noted in his treating psychiatrist's opinions. Unlike the ALJ in *Gayheart*, the ALJ in this case, however, did not rely on activities taken out of context. Moreover, unlike the record in *Gayheart*, the record in this case contains numerous examples indicating Plaintiff is able to leave the house independently and on a sustained

9

basis.  For instance, Plaintiff testified she can run errands, go to the grocery store, and go to the lake to photograph geese during the winter.  *PageID##* 98-100; *cf. Gayheart*, 710 F.3d at 378 ("Gayheart testified, in fact, that he had not gone to a store by himself in more than a year.").  Again, unlike in *Gayheart*, the record in this case also indicates Plaintiff is able to travel and attend professional sporting events.  For example, Plaintiff traveled to Charlotte, North Carolina to attend a NASCAR race over Memorial Day weekend in 2009 and stated she did not need to take her Remeron (an antidepressant) while there.  (*PageID#* 504); *cf. Gayheart*, 710 F.3d at 371 ("[Gayheart] stated that the only time he has left Ohio in the last three years had been to accompany his uncle to a car dealership in Indiana, but had an anxiety attack at the car dealership.").  Unlike the record in *Gayheart*, the record here indicates Plaintiff is capable of socializing in a group she met online over three years ago and plays online games such as Farmville and Cityville for two hours a day.[2]  (*PageID#* 502, 525); *cf. Gayheart*, 710 F.3d at 370 ("The act of being around people causes [Gayheart] to shake and can be a trigger of panic attacks.").  The record in this case, as further detailed through more examples provided in the Report and Recommendations, contains more than sufficient evidence of activities Plaintiff can do independently and on a sustained basis that are inconsistent with Ms. Fussichen and Dr. Halley's opinion.  In fact, many of these activities are detailed in the very treatment notes Ms. Fussichen and Dr. Halley claim to rely upon in forming their opinion.  It was therefore not an error of law for

---

[2] Farmville and Cityville are popular online games played on the social networking service Facebook.  *See* http://company.zynga.com/games/farmville; http://company.zynga.com/games/cityville

this Court to conclude that substantial evidence exists to support the ALJ's finding that Plaintiff's activities of daily living suggest she functions at a higher level than set forth in Ms. Fussichen and Dr. Halley's opinion. It also was not an error of law for this Court to conclude that substantial evidence supports the ALJ's decision to provide great weight to the assessment of Drs. Goldsmith and Haskins, which was consistent with the medical evidence of record as a whole.

Accordingly, even assuming Plaintiff's arguments could not have previously been raised, they fail to demonstrate the Court committed clear error of law that requires altering or amending the Court's prior Decision. As discussed herein, the Sixth Circuit's detailed decision in *Gayheart* – upon which Plaintiff bases her arguments – does not illustrate errors of law contained within this Court's Report and Recommendations (Doc. #14) nor Decision and Entry (Doc. #17). For the reasons stated above, Plaintiff's motion lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff Pamela Suske's Motion to Alter or Amend Judgment (Doc. #19) be DENIED; and,

2. This case remain terminated on the docket of this Court.


March 7, 2014

                    s/Sharon L. Ovington
                     Sharon L. Ovington
               Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).